No. 98-475

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 312

297 Mont. 243

992 P.2d 237

---

WILLIAM BREWINGTON, Personal

Representative of the Estate of Jack

Brewington, Deceased,

Plaintiff and Appellant,

v.

EMPLOYERS FIRE INSURANCE COMPANY,

COMMERCIAL UNION INSURANCE

COMPANY, BUMGARTNER LIND

ADJUSTERS, INC., PETE McGRAW,

ABC COMPANY NO.1 THROUGH

ABC COMPANY NO. 4, and JOHN DOE

NO. 1 THROUGH JOHN DOE 4,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Andrew J. Utick, Utick & Grosfield; Helena, Montana

For Respondents:

Dennis P. Clarke, Smith, Walsh, Clarke & Gregoire; Great Falls, Montana

_____

Submitted on Briefs: June 3, 1999

Decided: December 13, 1999

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ The Plaintiff, William Brewington, personal representative of the Estate of Jack Brewington, brought this action in the District Court for the Tenth Judicial District in Fergus County to recover damages from the Defendants for bad faith adjustment of his Workers' Compensation Claim and refusal to pay attorney fees awarded by

the Workers' Compensation Court. The District Court held that the statute of limitations barred Brewington's claim and granted the Defendants' motion to dismiss. Brewington appeals the dismissal of his claim. We reverse the judgment of the District Court.

¶ The following issues are presented on appeal:

¶ 1. Did the District Court err when it concluded that § 33-18-242, MCA preempted a claim for the common law tort of bad faith by third-party claimants?

¶ 2. Did the District Court err when it applied the one-year statute of limitations found at § 33-18-242(7)(b), MCA to the Plaintiff's claim?

¶ 3. When did the statute of limitations begin to run with respect to Brewington's claim?

## FACTUAL BACKGROUND

¶ In December 1974, during the course of his employment at Birkenbuel, Inc., Jack Brewington fell from scaffolding and injured his right hand and shoulder. Birkenbuel's workers compensation insurer, Employers' Fire Insurance Co. (EFIC), paid Brewington temporary total disability benefits until February 1983. After that time, because Brewington refused rehabilitation, EFIC began paying Brewington permanent partial disability benefits. Brewington disagreed with EFIC's decision to change his status. In June 1983 he filed a petition with the Workers' Compensation Court in which he asked that his total disability benefits be restored. The Workers' Compensation Court concluded that Brewington was 80 percent permanently partially disabled, based upon a 10 percent impairment rating, and awarded Brewington 400 weeks of benefits. Brewington then appealed to this Court.

¶ In *Brewington v. Birkenbuel, Inc.* (1986), 222 Mont. 505, 723 P.2d 938, we concluded that Brewington's disability was permanent and total. We also concluded that Brewington was entitled to a 20 percent statutory penalty because the EFIC's actions were unreasonable. We stated: "[r]espondent reduced claimant's benefits in retaliation for his refusal to work with a private rehabilitation firm. Such action is unreasonable." *Brewington*, 222 Mont. at 511, 723 P.2d at 942. We then remanded Brewington's case to the Workers' Compensation Court.

¶ On February 17, 1998 Brewington filed a complaint in District Court. He alleged that after we remanded his case, the Workers' Compensation Court ordered EFIC and Commercial Union Insurance Company to pay his attorney fees. According to Brewington's complaint, the order stated:

Claimant's attorney is entitled to and insurer is ordered to pay, attorney fees in the amount of 40 percent of claimant's future biweekly benefits as <u>claimant receives</u> them.

Brewington alleged that despite the court's order, EFIC and Commercial Union refused to pay his attorney fees from June 4, 1987 to February 22, 1996. He alleged that between February 1983, when the Defendants reduced his Workers' Compensation benefits, and February 22, 1996, when EFIC and Commercial Union began to make biweekly payments of attorney fees, the Defendants engaged in continuous tortious conduct. Brewington alleged that the conduct complained of breached the Defendants' duty of good faith and fair dealing.

9. ¶ Jack Brewington died on February 18, 1998. Subsequently, his lawyer amended his complaint to substitute, as the Plaintiff, William Brewington, who is the personal representative of Jack Brewington's estate.

10. ¶ On July 1, 1998, the Defendants moved to dismiss Brewington's amended complaint pursuant to Rule 12(b)(6), M.R.Civ.P. The District Court held that the statute of limitations, found at § 33-18-242, MCA, barred Brewington's claim, and granted the Defendants' motion.

## STANDARD OF REVIEW

11. ¶ The District Court dismissed Brewington's claim pursuant to Rule 12(b)(6), M.R. Civ.P., based on its conclusion that the complaint failed to state a claim for which relief could be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Trankel v. State of Montana* (1997), 282 Mont. 348, 350, 938 P.2d 614, 616 (citation omitted). In *Lockwood v. W.R. Grace & Co.* (1995), 272 Mont. 202, 207, 900 P.2d 314, 317 we stated:

A motion to dismiss under Rule 12(b)(6), M.R.Civ.P., has the effect of admitting all well-pleaded allegations in the complaint. In considering the motion, the complaint is construed in the light most favorable to the plaintiff, and all allegations of fact contained therein are taken as true.

The determination that a complaint fails to state a claim upon which relief can be

granted is a conclusion of law. *Trankel*, 282 Mont. at 351, 938 P.2d at 616. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Trankel*, 282 Mont. at 351, 938 P.2d at 616.

## ISSUE 1

12. ¶ Did the District Court err when it concluded that § 33-18-242, MCA preempted a claim for the common law tort of bad faith by third-party claimants?

13. ¶ The legislature enacted the Unfair Trade Practices Act to prohibit unfair or deceptive acts or practices. *See* § 33-18-101, MCA. Unfair claim settlement practices are prohibited. *See* § 33-18-201, MCA. The statute at issue in this case, § 33-18-242, MCA, provides:

(1) An *insured* or a *third_party claimant* has an independent cause of action against an insurer for actual damages caused by the insurer's violation of subsection (1), (4), (5), (6), (9), or (13) of 33_18_201.

(2) In an action under this section, a plaintiff is not required to prove that the violations were of such frequency as to indicate a general business practice.

(3) An *insured* who has suffered damages as a result of the handling of an insurance claim may bring an action against the insurer for breach of the insurance contract, for fraud, or pursuant to this section, but not under any other theory or cause of action. An insured may not bring an action for bad faith in connection with the handling of an insurance claim.

(4) In an action under this section, the court or jury may award such damages as were proximately caused by the violation of subsection (1), (4), (5), (6), (9), or (13) of 33_18_201. Exemplary damages may also be assessed in accordance with 27_1_221.

(5) An insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.

(6)(a) An insured may file an action under this section, together with any other cause of action the insured has against the insurer. Actions may be bifurcated for

trial where justice so requires.

(b) A *third_party claimant* may not file an action under this section until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.

(7) The period prescribed for commencement of an action under this section is:

(a) for an insured, within 2 years from the date of the violation of 33_18_201; and

(b) for a *third_party claimant*, within 1 year from the date of the settlement of or the entry of judgment on the underlying claim.

(8) As used in this section, an insurer includes a person, firm, or corporation utilizing self_insurance to pay claims made against them.

(Emphasis added.) Subsection (1) specifically provides both an insured and a third-party claimant an independent cause of action. Subsection (3) limits an insured, but not a third-party claimant, to a cause of action for breach of the insurance contract, for fraud, or pursuant to "this section," i.e., § 33-18-242, MCA. Subsection (3) also prohibits an insured, but not a third-party claimant, from bringing an action for bad faith. The term "third-party claimant" simply does not appear in subsection (3).

14. ¶ We construe a statute by its terms. Section 1-2-101, MCA. We do not insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. We cannot insert the term "third-party claimant" into § 33-18-242(3), MCA. Therefore, we conclude that § 33-18-242, MCA does not prohibit a third-party claimant from bringing an action for common law bad faith.

15. ¶ The Defendants contend that we have applied § 33-18-242(3), MCA to a third-party claim based on the adjustment of a worker's compensation case in *Grenz v. Orion Group, Inc.* (1990), 243 Mont. 486, 795 P.2d 444, and that *Grenz* prohibits a third-party claimant from pursuing an action for common law bad faith. However, we were not asked to decide in *Grenz* whether common law bad faith actions were preempted by § 33-18-242(3), MCA. We were asked to decide whether a third-party claim based on improper adjustment could be brought prior to the resolution by settlement or judgment of the underlying claim. We held that it could not, whether based on statute or common law bad faith. *Grenz*, 243 Mont. at 490-91, 795 P.2d at

446-47. Therefore, *Grenz* is not applicable to the facts before us in this case.

16. ¶ Brewington contends his claim is based on the common law tort of bad faith, not on § 33-18-242, MCA. He alleges that the Defendants engaged in "a continuing course of tortious conduct which has breached the Defendants' duty of good faith and fair dealing that the Defendants owed to [him]." He contends that *Hayes v. Aetna Fire Underwriters* (1980), 187 Mont. 148, 609 P.2d 257 and *Vigue v. Evans Products Company* (1980), 187 Mont. 1, 608 P.2d 488, establish a common law cause of action for bad faith, which was not affected when the legislature passed § 33-18-242, MCA. We agree.

17. ¶ In *Hayes* and *Vigue*, we held that an injured worker covered by the Workers' Compensation Act could assert a separate claim in the District Court for damages when the insurer and its adjuster allegedly committed intentional torts and acted in bad faith in adjusting and processing his claim. *Hayes*, 187 Mont. at 157, 609 P.2d at 262; *Vigue*, 187 Mont. at 7, 608 P.2d at 491.

18. ¶ Previously in this opinion, we concluded that § 33-18-242, MCA, by its terms, does not prohibit a third-party claimant from bringing an action for bad faith. When the common law is not in conflict with a statute, the common law applies. Section 1-1-108, MCA; *see also O'Fallon v. Farmers Ins. Exch.* (1993), 260 Mont. 233, 244, 859 P.2d 1008, 1015.

19. ¶ For these reasons, we hold that the District Court erred when it concluded that § 33-18-242, MCA prohibited the Plaintiff from pleading the common law tort of bad faith.

## ISSUE 2

20. ¶ Did the District Court err when it applied the one-year statute of limitations found at § 33-18-242(7)(b), MCA to the Plaintiff's claim?

21. ¶ Brewington contends that because his claim is not based on § 33-18-242(3), MCA, the one-year statute of limitation found at § 33-18-242(7), MCA does not apply to his case. He argues that pursuant to § 27-2-204(1), MCA the applicable statute of limitations is three years.

22. ¶ Section 33-18-242(7), MCA provides: "[t]he period prescribed for commencement of an action *under this section* is: . . . (b) for a third_party claimant, within 1 year from the date of the settlement of or the entry of judgment on the underlying claim." By its terms this statute is limited to actions brought pursuant to § 33-18-242, MCA. We, therefore, conclude that it does not apply to the common law tort of bad faith.

23. ¶ "The statute of limitations for 'bad faith' or 'breach of the covenant of good faith

and fair dealing' is the three-year statute applicable to torts, § 27-2-204(1), MCA." *State ex rel. Egeland v. City CN'L of Cut Bank* (1990), 245 Mont. 484, 487, 803 P.2d 609, 611. Section 27-2-204(1), MCA provides: "[t]he period prescribed for the commencement of an action upon a liability not founded upon an instrument in writing is within 3 years."

24. ¶ In this case, because Brewington's claim was brought for bad faith, not pursuant to § 33-18-242, MCA, we conclude that the District Court erred in applying the one-year statute of limitation set forth at § 33-18-242(7)(b), MCA. We further conclude that the proper statute of limitation is three years, as provided in § 27-2-204, MCA.

## ISSUE 3

25. ¶ When did the statute of limitations begin to run with respect to Brewington's claim?

26. ¶ The general rule is that the statute of limitations begins to run from the time that the cause of actions accrues. Section 27-2-102(2), MCA. Section 27_2_102, MCA provides:

(1) For the purposes of statutes relating to the time within which an action must be commenced:

(a) a claim or cause of action accrues when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action . . . .

27. ¶ In this case, Brewington alleges that Defendants' tortious conduct was continuous from February 1983 when his total disability benefits were wrongfully reduced until February 22, 1996 when his claim for the court awarded attorney fees was settled, and that the statute of limitations did not commence to run until the date of the last tortious act.

28. ¶ However, we conclude that Brewington has alleged two separate and independent torts and that the statute commenced for each on a different date. We do not address whether the conduct alleged was a continuous tort because the result would be the same whether or not continuous tortious conduct occurred.

29. ¶ We conclude that the first independent act of bad faith alleged was the Defendants' wrongful reduction of Brewington's benefits. All of the elements of that claim based on that act existed, he had a right to bring that action, and the District Court was

authorized to accept jurisdiction of that action on April 27, 1987 when the Workers Compensation Court entered judgment in his favor which restored his total disability benefits. That claim was, therefore, barred three years later on April 27, 1990.

30. ¶ We conclude that Brewington has alleged a second independent act or series of acts which may or may not constitute bad faith, by his allegation that the attorney fees awarded on June 4, 1987 were wrongfully withheld until February 22, 1996. However, a bad faith action based on that conduct could not have been commenced prior to February 22, 1996 based on our decision in *Grenz*, which in turn relied on *Hayes* and *Vigue*. Therefore, no court had authority to accept a complaint based on that claim and it did not accrue pursuant to § 27-2-102, MCA until February 22, 1996. That date, then, is the date on which the applicable three-year statute of limitations commenced and since this complaint was filed on February 17, 1998, the claim based on refusal to pay attorney fees was timely.

31. ¶ For these reasons we reverse the judgment of the District Court which dismissed Brewington's claim pursuant to Rule 12(b)(6), M.R.Civ.P., and remand for further proceedings consistent with and as limited by this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice Karla M. Gray, concurring in part and dissenting in part.

32. ¶ I concur in the result reached by the Court on issue one, but not in all that is said in that regard. I concur entirely in the Court's opinion on issue two. I respectfully dissent from the Court's opinion on issue three.

33. ¶ Before addressing my disagreements with portions of the Court's opinion, it is appropriate to comment on EFIC's reliance on the District Court's determination that § 33-18-242, MCA, "was enacted for the purpose of governing all bad faith claims." The court's determination may be correct; that is, the Legislature may well have intended to govern all "bad faith" claims by enacting § 33-18-242, MCA. If that was the Legislature's intent, however, it failed to accomplish that purpose with the plain language it used, as the Court's analysis points out.

34. ¶ It is beyond dispute that, in ascertaining the Legislature's intent, we are bound by plain and unambiguous language used in a statute and may not consider legislative history or any other means of statutory construction. *See, e.g.,* MacMillan v. State Compensation Ins. (1997), 285 Mont. 202, 208, 947 P.2d 75, 78 (citation omitted). The Legislature clearly created the independent action under § 33-18-242(1), MCA, for both insureds and third-party claimants. It then clearly provided that "[a]n insured may not bring an action for bad faith in connection with the handling of an insurance claim[,]" but did not enact a corresponding prohibition for third-party claimants such as Brewington. *See* § 33-18-242(3), MCA. At the same time, the Legislature demonstrated its awareness of how to create separate and distinct requirements for insureds and third-party claimants when it created different provisions for the two categories of claimants vis-a-vis when the statutory action could be brought and what statute of limitations would govern. *See* § 33-18-242(6) and (7), MCA. The fact is that--whatever its purpose in enacting the statutory cause of action--the Legislature used plain and unambiguous language in § 33-18-242, MCA, and did not prohibit common law bad faith actions against insurers by third-party claimants. We may not insert into a statute what the Legislature has omitted. Section 1-2-101, MCA.

35. ¶ Moving to the Court's opinion on issue one, I agree with the result reached, which is that § 33-18-242, MCA, does not bar Brewington's third-party common law bad faith claim against EFIC. My disagreement is with the Court's brief discussion of *Grenz.* I agree we held in *Grenz* that, under § 33-18-242, MCA, a third-party claim could not be brought prior to resolution of the underlying claim by settlement or judgment. I disagree that we held the same to be true regarding a common law bad faith claim. *Grenz* is not particularly clear in this regard due, perhaps, to the fact that the claimant therein was proceeding *pro se. See Grenz,* 243 Mont. at 487, 795 P.2d at 444. A close reading of our opinion, however, discloses that the claim had been brought--and dismissed--pursuant to § 33-18-242, MCA. In discussing the standards applicable to Rule 12(b)(6) dismissals, for example, we noted the district court's correct observation that dismissal may be appropriate "in the light of a specific

statute relating to the claim[.]" *Grenz*, 243 Mont. at 490, 795 P.2d at 446. More pointedly, we set forth the language of § 33-18-242(6)(b), MCA, that a third-party claimant could not file an action under that section until the underlying claim was settled or a judgment entered in claimant's favor, and "conclude[d] that the District Court properly dismissed Mr. Grenz'[s] complaint based upon the foregoing statute." *See Grenz*, 243 Mont. at 491, 795 P.2d at 447. Thereafter, we made a passing reference to *Vigue* and *Hayes*, but it is my view that our decision was based on the statute and did not include a holding that a third-party bad faith claim against an insurer for improper adjusting could not be filed until after the underlying claim had been settled or resolved by a judgment in the claimant's favor.

36. ¶ I recognize that--on a stand-alone basis--this is a relatively minor disagreement with the Court's opinion on issue one. However, it leads directly to my disagreement with the Court's opinion on issue three and the reasons for my dissent from that portion of the opinion.

37. ¶ With regard to issue three, then, I agree that § 27-2-102(2), MCA, sets forth the proper standard for determining when the three-year statute of limitations began to run on Brewington's claims. The Court's application of that statute to Brewington's two claims is brief and somewhat conclusory, however, and, with regard to the wrongful reduction of benefits claim, without citation to authority. Its conclusion that Brewington's claim existed--that is, that § 27-2-102(2), MCA, was satisfied--in 1987 when the Workers' Compensation Court entered judgment in his favor restoring his total disability benefits apparently is based on *Grenz*, which--according to the Court's observation regarding the attorney fees claim--"in turn relied on *Hayes* and *Vigue*." That is where my problem lies with the Court's analysis of when Brewington's claims accrued.

38. ¶ As noted above, it is my view that *Grenz* was resolved pursuant to the language set forth in § 33-18-242(6)(b), MCA, and not on any basis relating to the common law bad faith action. Without regard to the actual basis for our holding there, however, the *Hayes*- and *Vigue*-related language in *Grenz* is simply incorrect and, as a result, cannot serve as the basis for the Court's conclusions on issue three in the present case. We said in *Grenz* that "[a]s stated in *Vigue* and *Hayes* an independent action may lie *after* the underlying claim has been settled or a judgment entered in [the claimant's] favor." *Grenz*, 243 Mont. at 491, 795 P.2d at 447. We did not cite to any portion of *Vigue* or *Hayes,* however, and the fact is that neither *Vigue* nor *Hayes* contains such a statement. The sole issue in those cases was whether a third-party claimant could bring a separate action against an insurer in district court for the commission of intentional torts during the adjusting of a workers' compensation

claim. *See Hayes*, 187 Mont. at 151, 609 P.2d at 259; *Vigue*, 187 Mont. at 3, 608 P.2d at 489. We did not address--either expressly or implicitly--the issue of when such an action accrues under § 27-2-102(2), MCA, or otherwise. Therefore, it does not appear to me that precedent exists with regard to when Brewington's third-party common law bad faith claims accrued.

39. ¶ Absent such precedent, we must apply § 27-2-102(2), MCA, according to its terms. In this regard, I agree with the Court that the elements of Brewington's claim based on wrongful reduction of benefits accrued on April 27, 1987, when the Workers' Compensation Court entered judgment in his favor which restored total disability benefits. As a matter of both common sense and § 27-2-102(2), MCA, no claim for wrongful reduction of benefits could have accrued prior to a judgment in Brewington's favor on the benefits issue in the Workers' Compensation Court because no wrongful act had been established.

40. ¶ Applying the same analysis to Brewington's bad faith claim relating to attorney fees mandates a conclusion opposite to that reached by the Court. Taking the allegations of Brewington's complaint in this case as true, the Workers' Compensation Court on June 4, 1987, ordered the insurer to pay attorney fees in the amount of 40% of Brewington's future biweekly benefits as those benefits were received. The order was not appealed. EFIC apparently paid the biweekly benefits, but did not comply with the court's order on attorney fees from the time of the order until February 22, 1996, despite demands that it do so. Under these facts, it is my opinion that Brewington's bad faith claim for wrongful refusal to pay the attorney fees accrued at the time the first biweekly benefits were received without the corresponding payment of the ordered attorney fees; that is, the claim accrued when the insurer first refused to comply with the Workers' Compensation Court's order on attorney fees. At that point, the insurer's obligation to pay the fees had been established and the insurer's failure to meet that obligation became wrongful. The damage to Brewington also occurred at that time. Therefore, in terms of § 27-2-102(2), MCA, the elements of Brewington's common law bad faith claim based on wrongful refusal to pay the ordered attorney fees existed at that time, his right to maintain an action was complete, and a court was authorized to accept jurisdiction of the action.

41. ¶ The final step in the analysis, of course, is to apply the three-year tort statute of limitations contained in § 27-2-204, MCA, to Brewington's claim. That claim having accrued almost immediately after June 4, 1987, the three years during which Brewington could timely file his bad faith claim based on the wrongful refusal to pay the ordered attorney fees elapsed in the summer of 1990. Brewington filed his

action in February of 1998, and, as a result, that claim was not timely under § 27-2-204, MCA.

42. ¶ I would conclude that both of Brewington's third-party common law bad faith claims were barred by the applicable statute of limitations and, on that basis, I would affirm the District Court's dismissal of his complaint. I dissent from the Court's refusal to do so.

/S/ KARLA M. GRAY

Chief Justice J. A. Turnage:

¶43 I join in Justice Gray's dissent as to Issue 3 only.

/S/ J. A. TURNAGE