CHIEF JUSTICE GRAY
delivered the Opinion of the Court.
¶1 By order dated December 26, 2002, and pursuant to Rule 44, M.R.App.P., the United States Court of Appeals for the Ninth Circuit certified two questions to this Court. We accepted the certified questions by order dated January 7, 2003. Pursuant to Rule 44(d), M.R.App.P., we reformulate and address the following certified question:
¶2 For statute oflimitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers’ compensation claim, accrue when the Montana Workers’ Compensation Court enters a judgment which orders the insurer to pay for a previously denied benefit, but which *303 leaves unresolved the ultimate determinations of the extent and duration of the worker’s disability?
¶3 After briefing and oral argument by the parties, and for the reasons set forth below, we answer the question in the affirmative.
BACKGROUND
¶4 In August of 1993, Teddy Ann O’Connor (O’Connor) injured her back when she slipped and fell while working at the WalMart store in Billings, Montana. At the time of O’Connor’s injury, National Union Fire Insurance Company of Pittsburgh, PA (National Union) insured WalMart against workers’ compensation claims. National Union employed Alexsis, Inc. (Alexsis) to adjust O’Connor’s claim.
¶5 O’Connor’s original physician recommended against surgei’y to repair the damage to her back. She sought a second opinion and was referred to a neurosurgeon who recommended surgery. O’Connor asked Alexsis for permission to continue treatment with the neurosurgeon and undergo the surgery, but Alexsis denied her request. O’Connor filed a claim with the Workers’ Compensation Court (WCC) requesting various benefits, including that National Union pay for her back surgery. On May 19, 1995, the WCC determined that O’Connor had been temporarily totally disabled since March 16, 1994, and ordered National Union to pay for her surgery and lost wages since that date. Noting that O’Connor had not reached maximum healing, the WCC did not determine National Union’s further liability and stated there was “a legitimate issue as to whether [O’Connor’s] current condition is attributable to her 1993 fall.”
¶6 In October of 1996, several months after her surgery, O’Connor filed an action against National Union in the United States District Court for the District of Montana, alleging National Union violated the Montana Unfair Trade Practices Act (MUTPA), §§ 33-18-101, MCA, et seq., in that it delayed her surgery in bad faith by denying her claim when liability was reasonably clear. National Union moved for summary judgment, arguing that the action was barred by the statute of limitations. The federal trial court denied the motion, but dismissed O’Connor’s action without prejudice on the basis that it was filed prematurely. The court observed that the MUTPA prohibits a third-party claimant from filing an action against an insurer until the underlying claim is settled or reduced to judgment, and National Union’s liability had not been fully determined.
¶7 In January of 2000, O’Connor filed a second action against National Union in the federal district court in reaction to our ruling in *304 Brewington v. Employers Fire Ins. Co., 1999 MT 312, 297 Mont. 243, 992 P.2d 237, which she believed established that the underlying workers’ compensation claim need not be resolved completely before a bad faith claim may be brought. She again alleged violations of the MUTPA, and added a common law bad faith claim. National Union filed a third-party complaint against Alexsis for indemnification. Both National Union and Alexsis filed motions for summary judgment, asserting that O’Connor’s claims were barred by the applicable one-year and three-year statutes of limitations.
¶8 The federal district court interpreted Brewington as holding that, with regard to workers’ compensation proceedings, an “underlying claim” included each WCC interim judgment, regardless of whether the claimant’s ultimate disability had been determined. The court then concluded that the applicable statutes of limitations on O’Connor’s claims arising out of the WCC’s May 19,1995, decision began to run at the time that decision was entered and, consequently, those claims were time barred when O’Connor filed her action in 2000. Based on that conclusion, the court granted summary judgment to National Union and Alexsis on those claims, and dismissed as premature O’Connor’s bad faith claims occurring after May 19, 1995.
¶9 O’Connor appealed to the Ninth Circuit Court of Appeals from that portion of the federal district court’s order which granted summary judgment to National Union and Alexsis. The Ninth Circuit then certified two questions to this Court and we reformulated them into one question.
DISCUSSION
¶10 For statute of limitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in the adjustment of a workers’ compensation claim, accrue when the WCC enters a judgment which orders the insurer to pay for a previously denied benefit, but which leaves unresolved the ultimate determinations of the extent and duration of the worker’s disability?
¶11 A third-party claimant may not bring an action pursuant to the MUTPA “until after the underlying claim has been settled or a judgment entered in favor of the claimant on the underlying claim.” Section 33-18-242(6)(b), MCA. Furthermore, the statute of limitations for an action brought by a third-party claimant pursuant to the MUTPA is “within 1 year from the date of the settlement of or the entry of judgment on the underlying claim.” Section 33-18-242(7)(b), MCA. The MUTPA does not define the term “underlying claim.”
*305 ¶12 A common law bad faith claim accrues “when all elements of the claim or cause exist or have occurred, the right to maintain an action on the claim or cause is complete, and a court or other agency is authorized to accept jurisdiction of the action.” Section 27-2-102(l)(a), MCA. The statute of limitations for a common law bad faith claim is three years and begins to run “when the claim or cause of action accrues.” Sections 27-2-204(1) and 27-2-102(2), MCA.
¶13 O’Connor argues that, for purposes of a MUTPA bad faith claim, the settlement of, or the entry of judgment on, the underlying workers’ compensation claim does not occur until all issues contained in that claim-including the ultimate issues of liability, and extent and duration of disability-have been resolved. With respect to common law bad faith claims, she similarly argues that the cause of action does not accrue until all issues in the workers’ compensation claim-including liability, and extent and duration of disability-have been resolved. National Union and Alexsis contend that statutory and common law bad faith claims arising out of the handling of workers’ compensation claims accrue at the time each individual dispute giving rise to the bad faith claim is resolved by settlement or WCC judgment, regardless of whether other issues remain in dispute in the workers’ compensation case. National Union and Alexsis are correct.
¶14 We first discussed the accrual of a third-party bad faith claim against an insurer arising from conduct in the handling of a workers’ compensation claim in Grenz v. Orion Group, Inc. (1990), 243 Mont. 486, 795 P.2d 444. In that case, Grenz suffered a work-related injury for which the insurer, Orion Group, Inc. (Orion), accepted liability and paid benefits. Grenz initially received temporary total disability benefits. After several years, Orion reduced Grenz’s benefits to permanent partial disability. Grenz challenged the reduction and, eventually, the WCC restored his benefits to temporary total disability. Grenz, 243 Mont. at 487, 795 P.2d at 445-46. The WCC did not determine, however, whether Orion had acted unreasonably in reducing Grenz’s benefits. Grenz subsequently brought an action in the district court alleging Orion had acted in bad faith in handling his workers’ compensation claim. Orion moved to dismiss the action, asserting it was premature because the WCC had not determined whether Orion had acted unfairly. The district court granted the motion and Grenz appealed. Grenz, 243 Mont. at 488-89, 795 P.2d at 445-46.
¶15 On appeal, we observed that § 33-18-242(6)(b), MCA, provides that a third-party bad faith claim may not be brought until after there *306 has been either a settlement of or judgment entered on the underlying claim. Grenz, 243 Mont. at 491, 795 P.2d at 447. We then concluded the district court correctly determined that, until the WCC ruled on whether Orion’s actions in reducing Grenz’s benefits were improper, Grenz’s bad faith action based on those actions was premature. We affirmed the dismissal of Grenz’s complaint. Grenz, 243 Mont. at 490-91, 795 P.2d at 446-47. Thus, in analyzing whether Grenz’s bad faith claim had accrued, we looked to whether the WCC had entered a judgment relating to the specific issue and conduct alleged in Grenz’s district court bad faith complaint.
¶16 We next addressed this issue in Poteat v. St. Paul Mercury Ins. Co. (1996), 277 Mont. 117, 918 P.2d 677. There, Poteat suffered a work-related injury for which she filed a workers’ compensation claim. Poteat and the insurer eventually entered into a settlement agreement wherein Poteat was to receive a lump sum payment and expressly reserve her claim to future medical benefits. Poteat, 277 Mont. at 118, 918 P.2d at 678. Poteat subsequently brought a MUTPA action in the district court, alleging various acts of bad faith on the part of the insurer both prior to and after entry of the settlement agreement, as well as breach of the settlement agreement. Poteat, 277 Mont. at 119, 918 P.2d at 678. The insurer moved to dismiss the complaint for lack of subject matter jurisdiction. The district court determined that, because the settlement agreement had not resolved the question of Poteat’s future medical benefits, the agreement was not a full settlement of the underlying claim and, as a result, it had no jurisdiction over the bad faith action. On that basis, the court granted the insurer’s motion to dismiss. Poteat, 277 Mont, at 119, 918 P.2d at 678-79.
¶17 On appeal, we determined that, with regard to the workers’ compensation claim, Poteat’s claims for compensation and past medical benefits were fully and finally settled upon entry of the settlement agreement. As a result, her bad faith claims arising out of conduct prior to entry of the agreement accrued at that time, pursuant to § 33-18-242(6)(b), MCA, and Poteat could pursue a MUTPA claim with regard to that conduct. We reversed the district court’s dismissal of those claims. Poteat, 277 Mont. at 120-21, 918 P.2d at 679-80. We also concluded, however, that Poteat’s bad faith claims relating to conduct occurring after entry of the settlement agreement, including breach of the agreement itself, would not accrue until she obtained a settlement or WCC judgment resolving the issue of her future medical benefits. Poteat, 277 Mont. at 120, 918 P.2d at 679-80. Consequently, we *307 concluded the district court correctly determined that Poteat’s bad faith claims relating to conduct occurring after entry of the settlement agreement were premature and affirmed its dismissal of those claims. Poteat, 277 Mont. at 121, 918 P.2d at 680. As in Grenz, we resolved the issue of when the bad faith claims accrued by looking to whether there had been a settlement or judgment relating to the specific dispute in the workers’ compensation case from which the alleged bad faith conduct arose.
¶18 Our most recent discussion of when a bad faith claim arising out of the handling of a workers’ compensation claim accrues occurred in Brewington, which followed a prior appeal of the underlying workers’ compensation claim in Brewington v. Birkenbuel, Inc. (1986), 222 Mont. 505, 723 P.2d 938 (Brewington I). In Brewington, we set forth the pertinent facts from Brewington I as follows. In 1974, the claimant suffered a work-related injury for which the insurer began paying temporary total disability benefits. Subsequently, when the claimant refused rehabilitation, the insurer changed the benefits to permanent partial disability. The claimant challenged the change in status and the WCC determined he was permanently partially disabled. The claimant appealed, and we concluded the claimant’s disability was permanent and total. We further concluded that the insurer had acted unreasonably in reducing the claimant’s benefits. Brewington, ¶¶ 6-7. ¶19 In 1998, the claimant filed an action in district court alleging that, following our decision in Brewington I, the WCC had ordered the insurer to pay the claimant’s attorney’s fees resulting from the appeal and the insurer had refused to do so until February of 1996. The complaint alleged that this conduct constituted common law bad faith. The complaint also alleged that the insurer’s prior unreasonable action in reducing his benefits constituted common law bad faith. Brewington, ¶ 8. The insurer moved to dismiss the complaint, asserting that the tort of common law bad faith had been preempted by the enactment of the MUTPA and any claim brought pursuant to the MUTPA was barred by the § 33-18-242(7)(b), MCA, statute of limitations. The district court agreed and granted the motion to dismiss. Brewington, ¶10.
¶20 On appeal, we first concluded that the MUTPA does not prohibit a party from asserting a common law claim for bad faith and the applicable statute of limitations for such a claim is three years. Brewington, ¶¶ 14 and 24. We then determined that the claimant had alleged two separate and independent common law bad faith claims and the statute of limitations commenced on a different date for each. *308 Brewington, ¶ 28. The first bad faith claim was based on the insurer’s wrongful reduction of benefits. With regard to that claim, we concluded the elements of the claim existed-and the cause of action accrued-in 1987 when the WCC entered judgment restoring the claimant’s total disability benefits. Consequently, that claim was barred pursuant to the statute of limitations three years later in 1990. Brewington, ¶ 29. ¶21 The second independent bad faith claim was based on the insurer’s continued refusal to pay the ordered attorney’s fees. We concluded that claim accrued in February of 1996, when the insurer began to make the payments. Thus, the claimant’s bad faith claim based on that conduct, filed less than three years later in 1998, was timely and the district court erred in dismissing that portion of the complaint. Brewington, ¶¶ 30-31.
¶22 As in Grenz and Poteat, it is clear that we reached our decision regarding the date of accrual of a bad faith cause of action in Brewington by examining the particular dispute at issue in the underlying workers’ compensation case which gave rise to the allegations of bad faith conduct, and determining when that dispute was resolved. In other words, we determine the accrual date of a bad faith claim arising out of a separate and independent disputed issue by determining whether that particular issue has been ultimately resolved, regardless of the existence or absence of a resolution of other issues within the workers’ compensation case.
¶23 O’Connor urges that an affirmative answer to the certified question before us will produce the very problems for insurers about which we expressed concerns in Fode v. Farmers Ins. Exchange (1986), 221 Mont. 282, 719 P.2d 414, and might “promote chaos in court dockets and do violence to judicial economy.” In the referenced case, Fode was involved in a three-vehicle accident and Farmers Insurance Exchange (Farmers) insured one of the other drivers. Fode requested Farmers to pay for the property damage he incurred in the accident, but Farmers denied liability and refused to pay the claim. Fode brought a bad faith action against Farmers for allegedly refusing to settle the claim when its liability was reasonably clear. The district court subsequently granted summary judgment to Farmers and Fode appealed. At the time Fode appealed, the degrees of liability for each party involved in the accident had not been determined. Fode, 221 Mont. at 284, 719 P.2d at 415.
¶24 On appeal, we vacated the summary judgment entered by the district court and remanded for further proceedings. Fode, 221 Mont. at 286, 719 P.2d at 416. We observed that, as allowed under then- *309 existing law, the bad faith case was being pursued even though liability for the accident had not been determined. We also observed that, under then-current procedures,
[t]he insurance company is put in a difficult position by having to defend a bad faith case before the underlying case has been determined. Discovery of the insurer’s file in a bad faith case raises difficult “work product” and “attorney-client” problems affecting the underlying case. The practice also allows for undue leverage to be exerted by forcing the insurer to face the prospect of two lawsuits with the additional costs incurred for defense.
Fode, 221 Mont. at 287, 719 P.2d at 417. For those and other reasons, we held that
all proceedings in a bad faith case, alleging violations of the code which require a showing that liability be reasonably clear, are suspended until the liability issues of the underlying case have been determined either by settlement or judgment.
Fode, 221 Mont. at 287, 719 P.2d at 417. Fode has nothing to advance O’Connor’s position here.
¶25 First, Fode is readily distinguishable by the mere fact that it was not a workers’ compensation case and the law and procedures at issue-and of concern-there have since changed. In addition, our holding related solely to existing law and procedures. Finally, while O’Connor’s concerns about insurers, court dockets and judicial economy are appreciated, they are of limited relevance in light of Grenz, Poteat, and Brewington.
¶26 O’Connor also relies on three other non-workers’ compensation cases ’-Ridley v. Guaranty Nat. Ins. Co. (1997), 286 Mont. 325, 951 P.2d 987; Safeco v. Montana Eighth Jud. Dist., 2000 MT 153, 300 Mont. 123, 2 P.3d 834; and DuBray v. Farmers Ins. Exchange, 2001 MT 251, 307 Mont. 134, 36 P.3d 897-in support of her argument here. Although O’Connor concedes in her brief that none of these three cases involves third-party bad faith claims against an insurer and, therefore, do not address the issue of when such a claim accrues, she asserts that they support her argument by analogy. As discussed above, however, Grenz, Poteat and Brewington do address the issue before us and do so within the context of workers’ compensation cases. Therefore, we need not address Ridley, Safeco and DuBray here.
¶27 Based on the above discussion, we restate and answer the reformulated certified question as follows:
¶28 For statute of limitations purposes, do statutory and common law bad faith claims against an insurer, predicated on actions taken in *310 the adjustment of a workers’ compensation claim, accrue when the Montana Workers’ Compensation Court enters a judgment ordering the insurer to pay for a previously denied benefit, but leaves unresolved the ultimate determinations of the extent and duration of the worker’s disability? Yes.
JUSTICES WARNER and RICE concur.